## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-----------------------------x
In re:                       :
                             :
JOHN ALAN SAKON,             :    Bankruptcy Case No.
                             :    19-21619 (JJT)
        Debtor.              :    Chapter 7
-----------------------------x
                             :
JOHN ALAN SAKON,             :
                             :
        Appellant,           :
     v.                      :    Civ. No. 3:23-cv-250(AWT)
                             :
BONNIE MANGAN, UNITED STATES :
TRUSTEE,                     :
                             :
        and                  :
                             :
MAIN STREET GROUP LLC and    :
TOWN OF GLASTONBURY,         :
                             :
        Appellees.           :
-----------------------------x
```

### RULING ON JOINT MOTION TO DISMISS

Two appeals by debtor John Alan Sakon have been consolidated in this case. In the first appeal, Sakon appealed a February 15, 2023 order granting relief from and modifying the automatic stay imposed pursuant to 11 U.S.C. § 362(a). See Order Granting Relief from the Automatic Stay, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 685 (Bankr. D. Conn. Feb. 15, 2023) (ECF No. 1-2) ("Stay Relief Order"). Relief from the stay was granted to the Town of Glastonbury and Main Street Group LLC

1

("Main Street"). The Town of Glastonbury moved to dismiss that appeal as moot, and Sakon agrees it is moot. The court has issued a separate order dismissing this consolidated case as to the Town of Glastonbury. Because it is undisputed that the appeal of the Stay Relief Order is moot, the court has also issued a separate order dismissing as moot Sakon's appeal of the Stay Relief Order as to Main Street. Thus, the appeal of the Stay Relief Order is not the subject of this ruling.

Main Street and Bonnie C. Mangan, United States Trustee (the "Trustee"), have filed a joint motion to dismiss the second appeal. See Trustee & Main Street Joint Mot. to Dismiss Appeals (ECF No. 52) ("Joint Motion to Dismiss"). In the second appeal, Sakon appeals from:

- a June 14, 2023 memorandum of decision denying his motion to reconvert his Chapter 7 proceeding into a Chapter 11 proceeding, see Mem. of Decision on Debtor's Motion for Order Converting Chapter 7 Case to Chapter 11, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 914 at 2-3 (Bankr. D. Conn. June 14, 2023) ("Reconversion Denial Decision");

- a June 16, 2023 decision granting the Trustee's motion to approve procedures for the sale of the bankruptcy estate's real property, see Mem. of Decision Approving Trustee's Sale Procedures Regarding Mot. to Sell Real Property under 11 U.S.C. § 363, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 916 (Bankr. D. Conn. June 16, 2023) ("Proposed Sale Procedures Decision");

- a June 20, 2023 memorandum of decision denying Sakon's motions to reconsider (a) the Proposed Sale Procedures Decision and (b) a prior denial of Sakon's motion to compel the Trustee's abandonment of property, see Mem. of Decision on Debtor's Mot. for Recons., In re Sakon, Bankr. No. 19-

21619 (JJT), Dkt. No. 922 at 6 (Bankr. D. Conn. June 20, 2023) ("Reconsideration Decision"); and

- a June 21, 2023 order detailing the specific process by which the sale of the real property was to be conducted, see Sale Procedures Order, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 923 at 6 ("Sale Procedures Order").

For the reasons that follow, the appellees' Joint Motion to Dismiss is being granted.

## I. BACKGROUND

### A. Prepetition Activities

In 2012, the Town of Glastonbury commenced a foreclosure action against Sakon in Connecticut Superior Court based on his failure to pay property taxes for two properties. One is located at 2B Griswold Street and the other at 8E Main Street in Glastonbury, Connecticut. In 2016, the Superior Court entered judgment of foreclosure by sale in favor of Glastonbury, which was affirmed by the Connecticut Appellate Court in 2018. See Town of Glastonbury v. Sakon, 184 Conn. App. 385, 386-88 (2018). In 2016, the Town of Glastonbury commenced another foreclosure action against Sakon with respect to a third property, which is located at 131 Griswold Street, Glastonbury, Connecticut. In 2017, the Superior Court entered a judgment of strict foreclosure. Sakon's appeal from that judgment was dismissed by the Connecticut Appellate Court, and the Appellate Court denied his motion for reconsideration. See Dkt., Town of Glastonbury v. Sakon, Conn. App. Ct., No. 41285 (filed 2018); Dkt., Town of

<u>Glastonbury v. Sakon</u>, Superior Court, Judicial District of Hartford, Docket No. HHD-CV16-6073692-S (filed 2016).

Meanwhile, in December 2014, Main Street's predecessor in interest, which held a "valid and perfected first-priority mortgage on the Properties that is prior in right to all liens other than the Town's Tax Liens", commenced another foreclosure action in Connecticut Superior Court against Sakon "for failure to make timely payments under the terms of the Note." Proposed Sale Procedures Decision at 7.

### B. **Bankruptcy Court Proceedings**

On September 19, 2019, two days prior to the scheduled foreclosure sales of his three properties, Sakon filed a voluntary petition under Chapter 11 of the Bankruptcy Code. On May 28, 2020, after notice and a hearing, the Bankruptcy Court granted a motion by the Town of Glastonbury to convert the case to one under Chapter 7, concluding that Glastonbury had shown "cause" for converting the case, in the form of "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. 1112(b)(4)(A). <u>See</u> Mem. of Decision Granting Mot. to Convert, <u>In re Sakon</u>, Bankr. No. 19-21619 (JJT), Dkt. No. 250 (Bankr. D. Conn. May 28, 2020) ("Decision Granting Conversion") at 11. The Bankruptcy Court stated:

The record in this case unequivocally shows that the Debtor's estate has suffered a continuing loss and diminution during the eight months this case has been pending. At the time of filing, the Debtor's Schedules evidenced monthly post-petition losses of roughly $2,530.00. The Debtor's monthly income of $1,000.00 is insufficient to meet post-petition expenses, which continue to accrue. Notwithstanding the fact that rent, mortgage, tax, and administrative expenses on the Properties are not being paid, the Debtor's MORs indicate an end-of-the-month bank balance of less than $100.00 for the past three months. This is an insolvent, illiquid estate that will only continue to become more insolvent as time goes on. There is simply no indication that the Debtor is able to secure reliable, credible funding and there are no ostensible resources in the Chapter 11 estate to support the administration of this case. . . .

[T]here is no operating business, no cash flow, no revenues, and no incremental or meaningful progress toward the filing of a feasible and confirmable plan. The Debtor has simply failed to demonstrate that he has any tangible capitalization, enforceable financing, or cash flow that can support his current obligations or plan objectives. Chapter 11 cases do not reorganize on hope, interminable litigation, delays, or an absence of financial resources.

Id. at 11-13 (citations omitted). The Bankruptcy Court found

that Sakon possessed "limited income and minimal assets" and had

lacked "the ability to secure financing over many years now,"

and that a "Chapter 7 trustee will be able to properly value and

liquidate the Debtor's non-exempt assets, as well as be able to

examine the various disputed claims the Debtor has asserted

against his creditors in this case." Id. at 14-15. Accordingly,

the Bankruptcy Court concluded that conversion of the case to

one under Chapter 7 would be "in the best interests of the

creditors and the estate." Id. at 14.

Following the Decision Granting Conversion, a Chapter 7 Trustee was appointed. Sakon appealed the decision, which was affirmed. See Sakon v. A&F Main St. Assocs., LLC, No. 3:20-cv-353 (JAM), 2021 WL 165014, at *9 (D. Conn. Jan. 19, 2021) ("The Bankruptcy Court had ample evidence to convert Sakon's case to a Chapter 7 proceeding under this standard.").

In January 2023, the Town of Glastonbury and Main Street jointly moved under 11 U.S.C. § 362(d) for relief from the automatic stay, seeking to proceed with their respective foreclosure actions. On February 15, 2023, the Bankruptcy Court granted the joint motion, permitting the Town of Glastonbury and Main Street to "continue the Foreclosure Actions against the Debtor to final judgment, including obtaining any deficiency judgment against the Debtor with respect to real property located in Glastonbury, Connecticut . . . , provided that the Movants may not enforce any deficiency judgment against the Debtor absent further order of [the Bankruptcy Court]." Stay Relief Order at 1. The Bankruptcy Court explained that the "cause" for the order "includes but is not limited to the Debtor's history of abusive, dilatory filings and inexcusable delays in proceedings before this Court and his manifest efforts to impair, frustrate and delay state court legal process." Id. On February 24, 2023, Sakon filed a notice of appeal from the

Stay Relief Order. The Bankruptcy Court action was not stayed pending appeal.

On April 12, 2023, the Trustee filed a motion for approval of proposed procedures for the sale of the three parcels of real property that were the subject of the foreclosure actions. Under the proposed sale procedures, Main Street submitted a stalking horse bid of "$2,600,000.00 for the purchase of the Real Property free and clear of all liens, claims, encumbrances, and other interests" and "offered to purchase the Real Property by paying the Town's Tax Liens, credit bidding a portion of its debt, paying cash to the Bankruptcy Estate, and voluntarily subordinating any unpaid portion of its debt to all other creditors of the Bankruptcy Estate." Trustee's Mot. to Sell Properties & Approve Sale Procedures under 11 U.S.C. § 363(f), In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 773 (Bankr. D. Conn. Apr. 12, 2023) ("Motion to Approve Sale Procedures") at 8. The procedures contemplated that others could submit competing bids prior to a hearing at which an auction for the properties would be held. Id. at 19-22.

Over the following months, Sakon filed an objection to the Trustee's motion, along with exhibits and a list of witnesses, to which the Trustee and Main Street responded. See First Objection to Mot. to Sell, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 812 (Bankr. D. Conn. May 17, 2023); Joint

Response to Debtor's Objection, <u>In re Sakon</u>, Bankr. No. 19-21619
(JJT), Dkt. No. 835 (Bankr. D. Conn. May 23, 2023); Sakon's List
of Exs. & Witnesses, <u>In re Sakon</u>, Bankr. No. 19-21619 (JJT),
Dkt. Nos. 838, 839 (Bankr. D. Conn. May 24, 2023). Multiple days
of hearings, for which notice was provided, were held on the
motion. <u>See</u> Minute Entry, <u>In re Sakon</u>, Bankr. No. 19-21619
(JJT), Dkt. No. 846 (Bankr. D. Conn. May 25, 2023) ("Hearing
held" re: Motion to Approve Sale Procedures); Minute Entry, <u>In
re Sakon</u>, Bankr. No. 19-21619 (JJT), Dkt. No. 862 (Bankr. D.
Conn. June 1, 2023) (same); Minute Entry, <u>In re Sakon</u>, Bankr.
No. 19-21619 (JJT), Dkt. No. 886 (Bankr. D. Conn. June 7, 2023)
(same). The debtor did not appear on June 7, 2023. <u>See</u> Minute
Entry, <u>In re Sakon</u>, Bankr. No. 19-21619 (JJT), Dkt. No. 886
(Bankr. D. Conn. June 7, 2023) ("No appearance by debtor.").

On June 14, 2023, the Bankruptcy Court denied Sakon's March
6, 2023 motion to reconvert the Chapter 7 case to a case under
Chapter 11 of the Bankruptcy Code. The Bankruptcy Court
explained that "[i]n converting this case to Chapter 7, this
Court underscored the Debtor's inability to acquire financing
for any potential plan of reorganization[,] the fact he 'had no
reasonable prospect of rehabilitation or reorganization,' and
that 'cause' existed to convert the case to Chapter 7."
Reconversion Denial Decision at 2-3. The Bankruptcy Court noted,
with respect to the time that had passed since the district

court affirmed the Decision Granting Conversion, that "[i]n the intervening three years . . . the Debtor has done nothing to alter that disposition", and that "nothing in this record suggests that reconversion of this case to Chapter 11 would inure to the benefit of both creditors and any other party in interest". Id.

On the same day, the Bankruptcy Court denied Sakon's Motion to Compel Trustee's Abandonment of Property. See Memorandum of Decision on Debtor's Motion to Compel Trustee's Abandonment of Property, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 913 (Bankr. D. Conn. June 14, 2023)("Decision Denying Motion to Compel Abandonment").

On June 16, 2023, the Bankruptcy Court granted the Trustee's Motion to Approve Sale Procedures. The Bankruptcy Court explained:

> The Trustee's proposed sale process falls squarely within her mandate to liquidate property of the Chapter 7 bankruptcy estate, is a sound and prudent exercise of her reasonable business judgment, and reflects the best interest of the estate and creditors. The proposed Sale is the result of years of hard work by the Trustee and other constituents involved in this case. Despite being in a high-traffic area seemingly amenable to commercial activity, the Properties remain derelict and without permits to develop as of right. The prospect of a successful sale at a substantially enhanced price in the near term following a buyer's due diligence and permitting remains difficult, unpredictable, and several months — if not years — away. The Trustee, Main St., and the Town have represented during hearings that the cost of delaying the Sale continues to run at approximately $41,000 per month based on the accrual of real property taxes and monthly

maintenance costs on the Properties. No party objected to or challenged this representation. The Debtor has no resources or prospects to offset these costs and is unable to preserve, maintain, or insure the Properties. Faced with these same difficulties, the Trustee has spent considerable effort negotiating with Main St. to present an opportune sale structure that guarantees a method of maximizing value for the Debtor's creditors where none ostensibly existed.

Proposed Sale Procedures Decision at 19-20.

The Bankruptcy Court rejected Sakon's arguments, in opposition to the motion, that he could have sold the properties for a better price "with additional time" and that "the Trustee and opposing parties are collusive, corrupt, and conspiratorial." Id. at 20. Sakon also argued that one potential alternative buyer, Lyman Development Corporation ("Lyman"), was potentially willing to pay a greater amount to the bankruptcy estate for the properties, but the Bankruptcy Court found that Lyman's interest was "contingent on Lyman's due diligence and procurement of permits," "during which time the debt of Main St. and the Town would continue to accrue interest, fees, and costs." Id. at 20-21. The Bankruptcy Court found that the Trustee's proposed sale procedures "invites potential buyers such as Lyman to participate in the auction and submit a competing bid higher and better than Main St.'s", and that Lyman's offer was, in any event, "facially insufficient" and "not competitive with Main St.'s". Id. at 21.

On June 20, 2023, the Bankruptcy Court denied Sakon's motions to reconsider the Proposed Sale Procedures Decision and the Decision Denying Motion to Compel Abandonment, and for other, miscellaneous forms of relief. The Bankruptcy Court explained: "The Debtor's Motions once again demonstrably misapprehend the law . . . . His motions are both procedurally and substantively deficient and cannot be interpreted as anything else than yet another instance of the Debtor's continued efforts to delay, frustrate, and ultimately stymie the sale efforts of the Trustee and these very proceedings." Reconsideration Decision at 6.

On June 21, 2023, the court issued the Sales Procedure Order, which approved of "the Trustee entering into the Stalking Horse Purchase Agreement [with Main Street], subject to higher and better offers pursuant to the Sale Procedures." Sale Procedures Order at 4. That order also provided that all competing "bids for the Real Property must be received by the Trustee by July 31, 2023 at 4:30 p.m. EST" and that "an auction shall take place on August 2, 2023 at 12:00 p.m." Id. at 5-6.

On June 29, 2023, Sakon filed a notice of appeal of the Proposed Sale Procedure Decision, the Reconsideration Decision, and the Sales Procedure Order. On June 30, 2023, Sakon filed an amended notice of appeal, which added the Reconversion Denial Decision.

The Trustee did not receive notice of any competing bid by the July 31, 2023 deadline. See Notice of No Overbid, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 942 (Bankr. D. Conn. Aug. 1, 2023) at 1 ("the Trustee did not receive any Qualified Bids, except the Stalking Horse Bid."). The debtor did not appear at the August 2, 2023 sale hearing, nor did he file any exhibits or objections to those proceedings. The Bankruptcy Court entered an order approving the sale on August 3, 2023 ("Sale Approval Order"), and the sale of the properties to Main Street closed on August 30, 2023. The sale resulted in cash proceeds to the bankruptcy estate of $201,000. See Trustee's Rep. of Sale (ECF No. 52-3) at 3.

## II. DISCUSSION

Main Street and the Trustee argue that the court should dismiss Sakon's appeal for three reasons. They argue: "First, the Debtor's appeal has been mooted by the Trustee's sale of the Properties. Second, the Debtor improperly appealed interlocutory orders without grounds or permission. Finally, the Debtor lacks standing to appeal because he is 'out of the money' and does not qualify as a party in interest eligible to appeal." Main Street & Trustee's Mem. in Support of Joint Mot. to Dismiss (ECF No. 52-1) ("Appellees' Memorandum") at 6.

The court concludes that Sakon's appeal has not been mooted on the grounds asserted by the appellees. However, the court

concludes that the appeal should be dismissed because Sakon lacks standing. The appellees recognize that "a district court has discretionary appellate jurisdiction over an interlocutory order of a bankruptcy court", but argue that the court "should decline to address the merits of the Debtor's appeal here." Id. at 10 (citing 28 U.S.C. § 158(a)). However, in light of the fact that Sakon lacks standing, the court does not address the appellees' argument that Sakon improperly appealed interlocutory orders.

### A. Sakon's appeal is not moot on the grounds asserted by the appellees.

Relying on 11 U.S.C. § 363(m), Main Street and the Trustee contend that "[t]he Court should dismiss the Debtor's appeals as moot now that the Trustee has completed the sale of the Properties to Main St." Appellees' Memorandum at 6. They argue that "Main St qualifies as a good faith purchaser under § 363(m). The Bankruptcy Court explained in the Sale Approval Order that Main St proceeded in good faith . . . " Id. They argue further that "[n]otwithstanding [the fact that the United States Supreme Court recently held that Section 363(m) of the Bankruptcy Code is not jurisdictional], the Debtor's appeals are equitably moot." Id. at 7.

Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section

of a sale or lease of property does not affect the validity
of a sale or lease under such authorization to an entity
that purchased or leased such property in good faith,
whether or not such entity knew of the pendency of the
appeal, unless such authorization and such sale or lease
were stayed pending appeal.

11 U.S.C. § 363(m).

In In re 307 Assets LLC, 665 B.R. 214 (S.D.N.Y. 2024), the
court explained that "the doctrine of equitable mootness calls
for an analysis separate from the statutory limitation on
appeals found in Section 363(m)." 665 B.R. at 221. "The doctrine
looks to whether implementation of requested relief would be
inequitable, not whether such relief could otherwise be
conceivably fashioned, and 'applies to appeals of sale orders
[under Section 363] as well as appeals from orders confirming
plans of reorganization.'" Id. (citations omitted). "Courts have
. . . applied the Chateaugay II [In re Chateaugay Corp., 10 F.3d
944, 952-53 (2d Cir. 1993)] factors in analyzing whether an
appeal of an unstayed bankruptcy transaction is equitably moot
due to a 'comprehensive change in circumstances.'" Id.

Here, Main Street and the Trustee do not argue that Sakon's
appeal should be dismissed based on the Chateaugay II factors;
they do not discuss those factors at all.[1] Rather, they maintain

---

[1] The Chateaugay II factors are:

(1) "the court can still order some effective relief";

that the appeal should be dismissed because Main Street
qualifies as a good faith purchaser under 11 U.S.C. § 363(m) and
the sale of the properties was not stayed pending appeal. Thus,
the court does not analyze the issue of equitable mootness.

In MOAC Mall Holdings LLC v. Transform Holdco LLC, 598 U.S.
288 (2023), the Supreme Court held that § 363(m) is not a
jurisdictional provision. In explaining the nature of § 363(m),
the court stated:

> Congressional statutes are replete with directions to
> litigants that serve as "preconditions to relief." Filing
> deadlines are classic examples. So are preconditions to
> suit, like exhaustion requirements. So, too, are "statutory
> limitation[s] on coverage," or "on a statute's scope," such
> as the "element[s] of a plaintiff's claim for relief."
> Congress can, if it chooses, make compliance with such
> rules "important and mandatory." But knowing that much does
> not, in itself, make such rules jurisdictional.

MOAC Mall Holdings, 598 U.S. at 297 (citations omitted).

---

(2) "such relief will not affect the re-emergence of the
debtor as a revitalized corporate entity";
(3) "such relief will not unravel intricate transactions so
as to knock the props out from under the authorization for
every transaction that has taken place and create an
unmanageable, uncontrollable situation for the Bankruptcy
Court";
(4) "the parties who would be adversely affected by the
modification have notice of the appeal and an opportunity
to participate in the proceedings"; and
(5) "the appellant pursued with diligence all available
remedies to obtain a stay of execution of the objectionable
order if the failure to do so creates a situation rendering
it inequitable to reverse the orders appealed from."

In re Charter Commc'ns, Inc., 691 F.3d 476, 482 (2d Cir.
2012)(quoting Chateaugay II, 10 F.3d at 952-53).

Prior to MOAC Mall Holdings, the law in this Circuit was
that Section 363(m) "creates a rule of 'statutory mootness,'
which bars appellate review of any sale authorized by 11 U.S.C.
§ 363(b) or (c) so long as the sale was made to a good-faith
purchaser and was not stayed pending appeal." In re WestPoint
Stevens, Inc., 600 F.3d 231, 247 (2d Cir. 2010) (quoting
Weingarten Nostat, Inc. v. Serv. Merch. Co., 396 F.3d 737, 744
(6th Cir. 2005)). The analysis in In re WestPoint Stevens was as
follows:

> By restricting the exceptions to the application of section
> 363(m) to an entry of a stay or a challenge to the 'good
> faith' aspect of the sale, section 363(m) moots a broader
> range of cases than are barred under traditional doctrines
> of mootness. See Weingarten Nostat, Inc., 396 F.3d at 742
> ("Even if the appeal is not moot as a constitutional matter
> because a court could provide a remedy, ... § 363(m)
> requires that certain appeals nonetheless be treated as
> moot absent a stay."). Indeed, we have equated section
> 363(m) to an imposed jurisdictional limit on our authority
> to review the Bankruptcy Court's sale order. See [In re
> Gucci, 105 F.3d 837, 838 (2d Cir. 1997)] ("We hold that ...
> we have no jurisdiction to review an unstayed sale order
> once the sale occurs, except on the limited issue of
> whether the sale was made to a good faith purchaser.").

Id. See also In re 307 Assets, 665 B.R. at 221 n.4 ("[C]ourts in
the Second Circuit had previously referred to [this concept] as
'statutory mootness'" under Section 363(m)).

MOAC Mall Holdings invalidated the In re WestPoint Stevens
line of cases, "finding that Section 363(m) contained a
statutory limitation, rather than a jurisdictional bar." In re
307 Assets, 665 B.R. at 221 n.4 (emphasis in original and citing

MOAC Mall Holdings, 598 U.S. at 299-301, 304). But see Matter of Fieldwood Energy LLC, 93 F.4th 817, 821 (5th Cir. 2024) (applying MOAC Mall Holdings but holding that "the district court correctly held the appeal was statutorily moot").

The court agrees with the appellees that the statutory limitation in Section 363(m) applies here. The record shows that the authorization of the sale was not stayed and that Main Street purchased the property in good faith. See Mem. of Decision & Order on Debtor's Mot. for Stay Pending Appeal, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 939 (Bankr. D. Conn. July 21, 2023) at 11 ("The Debtor has failed to meet his heavy burden on the facts or law in showing that he is entitled to a stay pending his appeal."); Proposed Sale Procedures Decision at 26 ("Main St. has demonstrated its good faith . . . "); Sale Approval Order at 4 (Main Street "is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby").

However, the consequence of the statutory limitation in Section 363(m) being applicable is that if a court revises or modifies on appeal the authorization for the sale of the properties, the validity of the sale is not affected. But as the appellees state: "This is not a case where the Debtor has appealed the Court's Sale Approval Order or challenged the Court's findings regarding § 363(m). To the contrary, the Debtor

never objected to the Sale Approval Order or appealed or briefed any issues regarding § 363(m)."[2] Appellees' Memorandum at 8. Therefore, Section 363(m) does not limit Sakon's right to appeal.

## B. **Sakon lacks standing to appeal.**

Main Street and the Trustee argue that Sakon lacks standing because he has not demonstrated that there "'could be a surplus after all creditors' claims are paid.'" Appellees' Memorandum at 9-12 (quoting In re 60 E. 80th St. Equities, Inc., 218 F.3d 109, 115 (2d Cir. 2000)). The court agrees.

"To have standing to appeal from a bankruptcy court ruling in this Circuit, an appellant must be an 'aggrieved person,' a person 'directly and adversely affected pecuniarily' by the challenged order of the bankruptcy court." In re Gucci, 126 F.3d 380, 388 (2d Cir. 1997). "Such a test is stricter than Article III's 'injury in fact' test for standing." Id. Such "stringency" is "rooted in a concern that freely granting open-ended appeals to those persons affected by bankruptcy court orders will sound the death knell of the orderly disposition of bankruptcy matters." Id. "It is well-established that a Chapter 7 debtor is

---

[2] Sakon improperly sought to expand the scope of his appeal by stating that he was appealing the Sale Approval Order in a document he called "Appellant's Objection to Joint Motion to Dismiss Appeal", which was struck by the court. See Order Striking Document (ECF No. 78).

a 'party in interest' and has standing to object to a sale of the assets, or otherwise participate in litigation surrounding the assets of the estate only if there could be a surplus after all creditors' claims are paid." In re 60 E. 80th St. Equities, 218 F.3d at 115. "'[S]ince the bankrupt is normally insolvent, he is considered to have no interest in how his assets are distributed among his creditors and is held not to be a party in interest.'" Willemain v. Kivitz, 764 F.2d 1019, 1022 (4th Cir. 1985)(citation omitted). See also In re J. M. Wells, Inc., 575 F.2d 329, 331 (1st Cir. 1978) ("In particular a bankrupt that has no hope of obtaining any return from its estate consistently has been held to lack standing to contest orders affecting the size of the estate."); 1 Bankruptcy Law Manual §§ 2:46, 2:50 (5th ed.) ("Courts generally agree that a debtor has no standing to object to the manner in which the trustee administers the bankruptcy estate, except in the case where a surplus is in prospect. Once a case is filed, property of the estate, for example, belongs to the estate and not to the debtor; the debtor has no standing to pursue assets, begin or continue litigation, or otherwise exercise the rights of the trustee who stands in the shoes of the debtor."); In re Roussopoulos, 198 B.R. 33, 44 n.9 (Bankr. E.D.N.Y. 1996) ("an insolvent Chapter 7 debtor lacks standing to challenge a proposed sale of estate property because he lacks a pecuniary interest in such property").

"In the typical case, the debtor has no standing to be
heard on many matters not involving the discharge of debt
because the outcome is irrelevant to the debtor when the estate
will not generate a surplus." In re Vebeliunas, 231 B.R. 181,
189 (Bankr. S.D.N.Y. 1999). "To defeat this 'assumption' as to a
lack of standing, a debtor must provide sufficient evidence to
the bankruptcy court to prove a 'reasonable possibility' of a
surplus exists". Licata v. Coan, No. 3:14-CV-1754 (MPS), 2015 WL
9699304, at *5 (D. Conn. Sept. 22, 2015) (citation omitted). It
is incumbent on "'persons seeking appellate review, just as it
[is on] persons appearing in courts of first instance'" to
demonstrate standing. Tachiona v. United States, 386 F.3d 205,
210-11 (2d Cir. 2004)(quoting Lujan v. Defs. of Wildlife, 504
U.S. 555, 560 (1992)).

Sakon has not shown that he is "a person 'directly and
adversely affected pecuniarily' by the challenged order of the
bankruptcy court" because a reasonable possibility of a surplus
existed. In re Gucci, 126 F.3d at 388. As the appellees contend:

> The Debtor is unquestionably "out of the money." The
> assets of the Bankruptcy Estate currently include the
> proceeds from the sale of the Property, which total
> $201,000, plus a contingent and unliquidated personal
> injury claim arising from an accident where the Debtor was
> riding a bicycle and was allegedly hit by a car, which
> claim has been disputed and is of uncertain value. The
> undisputed claims currently filed against the Bankruptcy
> Estate exceed $4 million. In addition, there are
> substantial administrative expense claims against the
> Bankruptcy Estate, including the Trustee's statutory

> commission, pursuant to § 326 of the Bankruptcy Code, which
> is currently estimated to be at least $70,000, plus
> attorney's fees, accountant's fees, and out-of-pocket
> expenses incurred for the benefit of the estate. There is
> quite simply, no reasonable possibility of a surplus in
> this case. . . .

Appellees' Memorandum at 12.

The appellees' position is well supported by the record.
For instance, in the Decision Granting Conversion in 2020, the
Bankruptcy Court found that the estate's liabilities far
outweighed its assets or prospects for recovery. That decision
states:

> [T]he Debtor's liabilities include a first and second
> mortgage secured by the Properties in the amount of
> $5,050,136.00, in addition to the Town's pre-petition tax
> claims of $908,277.23 secured by liens on the Properties.
> The total amount of debt secured by the Properties is
> approximately $5,958,413.23, with unsecured claims
> totaling $1,011,281.11. . . .
>
> This is an insolvent, illiquid estate that will only
> continue to become more insolvent as time goes on. There is
> simply no indication that the Debtor is able to secure
> reliable, credible funding and there are no ostensible
> resources in the Chapter 11 estate to support the
> administration of this case.

Decision Granting Conversion at 10-12. In June 2023, the
Bankruptcy Court found that "[i]n the intervening three years
since the case was converted, the Debtor has done nothing to
alter that disposition." Reconsideration Denial Decision at 3.
See id. (noting that Sakon continues to be "unemployed, has no
income, and otherwise lacks any resources to support the
administration of the estate or the maintenance, taxes, and

insurance of the subject real properties while he pursues their

proposed sale"). See also Amended 20 Largest Unsecured

Creditors, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 35

(Bankr. D. Conn. Oct. 10. 2019)(detailing Sakon's self-reported

unsecured debts and the corresponding amounts, as of 2019);

Claims Register Summary, In re Sakon, Bankr. No. 19-21619 (JJT),

Dkt. No. 813-6 (Bankr. D. Conn. May 18, 2023) (showing the

amount unsecured claims against the estate as of May 2023).

In addition, the bankruptcy estate continued to incur

carrying costs for taxes and maintenance. The Bankruptcy Court

found:

> The Trustee, Main St., and the Town have represented during
> hearings that the cost of delaying the Sale continues to
> run at approximately $41,000 per month based on the accrual
> of real property taxes and monthly maintenance costs on the
> Properties. No party objected to or challenged this
> representation. The Debtor has no resources or prospects to
> offset these costs and is unable to preserve, maintain, or
> insure the Properties.

Proposed Sale Procedures Decision at 20. The bankruptcy estate

was also incurring other administrative costs. See, e.g., Order

Authorizing Appointment of Accountant, Effective March 24, 2023,

Bankr. No. 19-21619, Dkt. No. 791 (Bankr. D. Conn. Apr. 18,

2023)(granting Trustee's application to employ an accountant for

the estate at an hourly rate not to exceed $515); Fitzgerald Law

Amended Application for Compensation, Bankr. No. 19-21619 (JJT),

Dkt. No. 1002 (billing the bankruptcy estate, pursuant to 11

22

U.S.C. § 303(a)(1), $73,122.73 "for [legal] services rendered as counsel to the Trustee" between March 21, 2023 and September 30, 2023); Order Approving Interim Application for Compensation, Bankr. No. 19-21619 (JJT), Dkt. No. 1033 (approving the bankruptcy estate's payment of $73,122.73 in fees and expenses to Fitzgerald Law P.C.).

The record shows that the sale to Main Street resulted in proceeds that were sufficient to resolve the secured creditors' claims against the bankruptcy estate and leave $201,000 to be applied toward resolving unsecured creditors' claims and administrative costs, but not pay them in full. See Trustee's Rep. of Sale (ECF No. 52-3) at 3 (showing $201,000 in cash proceeds); Claims Register, In re Sakon, Bankr. No. 19-21619 (Bankr. D. Conn. last amended Sept. 27, 2023) (showing pending claims against the estate).

Even when the court liberally construes Sakon's assertions about the value of the bankruptcy estate's assets as an argument that he provided the Bankruptcy Court with sufficient evidence to establish that a reasonable possibility of a surplus existed, Sakon identified merely speculative, not likely, bases for any further recovery by the bankruptcy estate. See Lujan, 504 U.S. at 560 (To demonstrate Article III standing, "the plaintiff must have suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or

imminent, not 'conjectural' or 'hypothetical'" (citations omitted)).

Sakon asserts, as he did throughout the proceedings in the Bankruptcy Court, that the assets of the bankruptcy estate include several valuable causes of action he might bring against his creditors. See Mem. in Opp'n to Mot. to Dismiss at 1, 11-12 (ECF No. 65) ("Sakon Opposition") at 10; Second Revised & Am. Schedule of Potential & Pending Claims Against Third Parties, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 690 (Bankr. D. Conn. Mar. 6, 2023) (listing possible causes of action). With respect to these claims, the Bankruptcy Court found that

> [t]he potential claims asserted by the Debtor against Main St., described in the Schedule of Potential Claims, lack sufficient particularity for the Court to meaningfully assess the merits of these claims. The Court asked the Debtor to explain, with greater particularity, the nature of these claims during hearings but the Debtor was unable to provide any clarity on this issue. The Trustee has investigated and evaluated the potential claims and causes of action against Main St. and does not believe them to be of significant value or have a meaningful prospect of success. She believes the associated litigation expenses would exceed the value of any such claims and causes of action. Her counsel has dutifully surveyed for the Court the material and practical considerations on the record that militate in favor of resolving these claims in connection with the assurances achieved from Main St. in the sale process.

Proposed Sale Procedures Decision at 17.[3] A review of the record supports the findings of the Bankruptcy Court, and Sakon points to no evidence showing that these purported causes of action are likely to be brought, let alone that they have any value. "This type of hypothetical or conjectural [basis for the estate's recovery] is not sufficient to confer standing." Martin v. S.E.C., 734 F.3d 169, 174 (2d Cir. 2013).

Sakon also asserts, without evidence, that the properties were worth significantly more than the amount Main Street paid for them and that another buyer was prepared to purchase the properties for $8.5 million. See Sakon Opposition at 11. Sakon highlights the fact that Main Street paid approximately $2.6 million for the properties at auction and disregards the fact that, "[b]ased upon Main St.'s credit bid, its agreement to pay the tax debt on the Properties as well as the Up-Front Expenses and the Cash Consideration, along with its voluntary agreement to subordinate its debt, Main St.'s total bid is an equivalent bid of at least $7.9 to 8 million to the Chapter 7 estate."

_____

[3] In June 2021, the Bankruptcy Court had approved a stipulated order in which the bankruptcy estate agreed to "retain and administer" as part of the bankruptcy estate only one of Sakon's personal injury claims, but abandoned to Sakon many other claims listed in his previous Schedules. Stipulated Order re: Debtor's Motion to Compel Abandonment of Property, In re Sakon, Bankr. No. 19-21619 (JJT), Dkt. No. 456 (Bankr. D. Conn. June 18, 2021).

Proposed Sale Procedures Decision at 15. In comparison, "Lyman's proposed purchase price of $8.5 million [was] facially insufficient to pay all creditor's claims in full and therefore . . . [was] not competitive with Main St.'s Stalking Horse Bid because it would not result in any dividend to unsecured creditors." Id. at 21.

In addition, Sakon asserts that he could have procured alternative, preferable financing. Sakon provides no credible evidence in support of this contention. Over the years, Sakon contended at various stages of the proceedings that financing was imminent, and he cited to nonbinding communications with potential financiers to support his contention. The Bankruptcy Court found his contentions to be without merit.[4] On appeal,

---

[4] For instance, in 2020 in the Decision Granting Conversion, the Bankruptcy Court observed:

> At his first appearance before this Court on October 4, 2019, the Debtor claimed that he had mortgage companies interested in refinancing the Properties; he had a "letter of intent" from a lender with a preliminary commitment for $4.8 million; and he hoped to close the refinancing within sixty days. Since then, this Court has consistently heard the Debtor's claims of interested lenders providing "letters of intent" to fund his projects; and when no such financing comes to fruition, he reverts to elaborate excuses in order to explain why the financing fell through. The Debtor's most recent iteration of this tactic relies upon an uncertified letter from HOC Holdings, LLC, that demonstrably does not rise to the level of a letter of understanding of lending, and which significantly, is predicated upon the Debtor's ability to assume the fatally terminated Lease. While HOC's letter was only one of four

Sakon makes the same contentions without any credible evidence to support them. For example, Sakon's showing with respect to Lyman's purported willingness and readiness to purchase the properties for $8.5 million consists of a document that appears to be an unsigned and undated draft contract for Lyman to purchase the properties from the Trustee. See Appellant Br. Ex. M (ECF No. 49-13). Yet Lyman and other potential buyers could have participated in the auction but did not do so.[5] See Proposed Sale Procedures Decision at 21 ("The Trustee's proposed Sale invites potential buyers such as Lyman to participate in the

---

> proposals the Debtor expected to have "within the next week," as this Court noted in a previous ruling, the Debtor's pleas and insistence that the Court just wait and see what materializes from his heretofore failed fundraising has proven to be unavailing and unconvincing.

Decision Granting Conversion at 13. Sakon engaged in similar conduct after the Trustee filed her motion for the court to approve of her proposed sale procedures. See Proposed Sale Procedures Decision at 21-22 (finding Sakon's arguments "that he is in the best position to sell or market the Properties and that he can achieve a better purchase price by waiting to optimally time the Sale with the real estate market" and reliance on letters of intent to be "not well founded").

[5] Sakon makes a conclusory assertion that the "entire sales procedure was a sham". Appellant Revised Br. (ECF No. 48) at 41. However, he identifies no procedural or other aspect of the auction process that would have precluded competing bids. The record shows Sakon and others were afforded adequate time, notice, and process to voice objections to the sale, and that the sale procedures contemplated the participation of bidders other than Main Street.

auction and submit a competing bid higher and better than Main St.'s Stalking Horse Bid.").

Thus, even when the court liberally construes Sakon's assertions, he fails to satisfy his burden of establishing that he is "a person 'directly and adversely affected pecuniarily' by [any] challenged order of the [B]ankruptcy [C]ourt" because a reasonable possibility of a surplus existed. In re Gucci, 126 F.3d at 388.[6] Therefore, Sakon lacks standing to prosecute this appeal, and it must be dismissed for lack of jurisdiction.

## III. CONCLUSION

For the reasons set forth above, the Trustee and Main Street's Joint Motion to Dismiss (ECF No. 52) is hereby GRANTED. Debtor John Alan Sakon's second appeal is dismissed for lack of standing. The Clerk shall close this case.

It is so ordered.

Signed this 7th day of March 2025 at Hartford, Connecticut.

/s/ AWT
Alvin W. Thompson
United States District Judge

_____

[6] Sakon attempted to file a second opposition to the appellees' Joint Motion to Dismiss without authorization from the court, and the court struck it. See Order Striking Document (ECF No. 78). The court's analysis would have been no different if it had allowed Sakon to file his proposed second opposition, because, in that document, Sakon merely repeats his assertions with respect to Lyman, reiterates that the Trustee should pursue a potential cause of action of disputed value, and adds a speculative valuation of the bankruptcy estate's properties.